IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | |
|---|---|
| GREGORY ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:14-0330 |
| ) | |
| S.W. MILLER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff filed a Motion to Compel Answers to Specific Interrogatories and Production of, or Permission to Inspect, Requested Documents on July 15, 2014. (Document No. 20.) Defendants filed a Response in Opposition on July 29, 2014. (Document No. 21.) The Court held a hearing upon Plaintiff's Motion to Compel on Friday March 13, 2015. Having considered the parties' positions and applicable law, the undersigned has determined that Plaintiff's Motion should be granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2013, Plaintiff filed a Complaint in the Circuit Court of Kanawha County, West Virginia, naming S. W. Miller, E. M. Peterson and E. R. Moyer, Police Officers with the City of South Charleston and the City of South Charleston as Defendants. (Document No. 1-2, pp. 3-17.)[1] Plaintiff alleges that in July, 2012, a manager of Walmart Supercenter [Walmart] in South Charleston where Plaintiff worked reported to Defendants that Plaintiff was involved with other employees of Walmart in the theft of electronic equipment from Walmart. (Id., ¶ 9.) Plaintiff claims

---

[1] Defendants filed a Notice of Removal of Plaintiff's action from the Circuit Court of Kanawha County, West Virginia, to this District Court on January 3, 2014. (Document No. 1.)

that, based upon the report of his involvement in the theft, Defendant Miller filed a criminal complaint charging him with felony embezzlement and fraudulent schemes and an arrest warrant application and Plaintiff was arrested on July 29, 2012. (Id., ¶¶ 10 and 13.) Walmart suspended Plaintiff without pay. (Id., ¶ 14.) Plaintiff alleges that the charges were dismissed at a preliminary hearing on August 8, 2012, "because the State had no witnesses." (Id., 16.) Walmart did not reinstate Plaintiff in his employment (Id., ¶ 17.), and in October, 2012, Plaintiff filed an administrative Complaint with the West Virginia Human Rights Commission claiming discrimination (Id., ¶ 18.). Thereafter, Plaintiff alleges, Walmart's manager contacted the City of South Charleston Police Department requesting that Plaintiff be charged as he was before and arrested. (Id., ¶ 19.) Plaintiff alleges that Defendants Peterson and Moyer filed a criminal complaint charging him as before and applied for an Arrest Warrant. (Id., ¶ 20.) Plaintiff states that he was then arrested on November 27, 2012. (Id., ¶ 21.) Plaintiff states that his Human Rights Commission Complaint was denied "as a result of his arrest by Defendants Peterson and Moyer. (Id., ¶ 24.) Plaintiff states that a preliminary hearing was held upon the renewed charges against him on January 10, 2013, and the "Kanawha County Magistrate Judge . . . found that probable cause did not exist for the arrest and prosecution . . .." (Id., ¶ 29.) Plaintiff asserts that by their conduct, all Defendants deprived him of his constitutional rights citing 42 U.S.C. § 1983 (Counts I (Defendant Miller), II (Defendants Peterson and Moyer) and III (the City of South Charleston).). Respecting the assertions respecting the City of South Charleston, Plaintiff states (Id., ¶ 55.) that "[t]he opportunity for further discovery may provide additional evidence that the City of South Charleston is recklessly or willfully indifferent to the constitutional rights of others or even engaged in a pattern and practice of depriving certain individuals of their constitutional rights, perhaps based on racial prejudice or outright animus

2

(Plaintiff Robinson is African-American) or perhaps some other basis." Plaintiff further asserts that the individual Defendants' conduct amounted to malicious prosecution and was "motivated by prejudice and/or animus, whether against Plaintiff Robinson personally or because of his race." (Count IV (Defendant Miller) at ¶ 63 and Count V (Defendants Peterson and Moyer) at ¶ 70.)

Defendants filed an Answer to Plaintiff's Complaint denying Plaintiff's claims and a Motion to Dismiss and Memorandum in Support. (Document Nos. 3, 5 and 6.) Defendants claimed in seeking dismissal that dismissal is required because (1) the individual police officer Defendants have qualified immunity from liability under Section 1983; (2) probable cause existed for the police officer Defendants' issuance of the Criminal Complaints charging Plaintiff and Applications for Warrants for his arrest; (3) the City of South Charleston cannot be vicariously liable for the negligence of the police officer Defendants; and (4) Plaintiff cannot establish the four elements of a malicious prosecution claim. Plaintiff filed a Memorandum in Opposition to Defendants' Motion on March 26, 2014 (Document No. 8.), and Defendants filed a Reply on April 3, 2014 (Document No. 9.). By Order filed on March 12, 2015, the District Court granted in part and denied in part Defendants' Motion. (Document No. 85.) The undersigned understands that the District Court granted Defendants' Motion to the extent that Defendants claimed that the City of South Charleston cannot be vicariously liable to Plaintiff for the negligence of the police officer Defendants and denied Defendants' Motion to Dismiss in all other respects.

By his Motion to Compel Answers to Specific Interrogatories and Production of, or Permission to Inspect, Requested Documents (Document No. 20.), Plaintiff requests that the Court order Defendants to respond to his Interrogatory Nos. 4 and 5 and Request for Production No. 7. Interrogatory Nos. 4 and Defendants' Answer are as follows:

3

>Set forth the name and last known address of every customer, employee, and/or former employee of the Walmart Supercenter who has been reported by Walmart's agents to the South Charleston Police Department on suspicion of fraud, fraudulent schemes, theft, larceny, shoplifting, and/or embezzlement in the last ten years. For each customer, employee, and former employee of Walmart, please provide: (a) the person/suspect's race and gender; (b) the nature of the crime for which the person/suspect was reported; (c) the Walmart agent or employee who made the report; (d) the South Charleston Police Department officer(s) who received the report and investigated the report; (e) the specific criminal charges, if any, that resulted from the report and the court and case number relating to the charges; and (f) the disposition of each of the criminal charges (e.g., no contest plea, guilty plea, pretrial dismissal and reason, pretrial diversion, guilty verdict, not guilty verdict, etc.).
>
>Answer: Objection. This interrogatory is irrelevant, overly broad, unduly burdensome, and amounts to nothing more than a fishing expedition as there are no allegations that the individual South Charleston police officer Defendants' arrest of plaintiff was racially motivated.

Interrogatory No. 5 and Defendants' Answer are as follows:

>Set forth a list of each and every person reported by any agent or agents of the Walmart Supercenter to the South Charleston Police Department on suspicion of fraud, fraudulent schemes, theft, larceny, shoplifting, and/or embezzlement in the last ten years whom the South Charleston Police Deportment has declined to charge with a crime upon completion of its investigation. For each such person, please provide: (a) the person/suspect's race and gender; (b) the nature of the crime for which the person/suspect was reported; (c) the Walmart agent or employee who made the report; (d) the South Charleston Police Department officer(s) who received the report and investigated the report; (e) the specific criminal charges, if any, that resulted from the report and the court and case number relating to the charges; and (f) the disposition of each of the criminal charges (e.g., no contest plea, guilty plea, dismissal, pretrial diversion, etc.).
>
>Answer: Objection. This interrogatory is irrelevant, overly broad, unduly burdensome, and amounts to nothing more than a fishing expedition as there are no allegations that the individual South Charleston police officer Defendants' arrest of plaintiff was racially motivated.

Request for Production No. 7 and Defendants' Response are as follows:

>Produce any and all writings in the party's possession, custody, or control, whether submitted to a tribunal or to the party directly or acquired by the party through some other means, alleging that the South Charleston Police Department or an agent or

>employee of the South Charleston Police Department has engaged in racial profiling and/or racial discrimination of any kind against any person.
>
>Response: Objection. Request for Production No. 7 seeks information that is irrelevant, overly broad, unduly burdensome, and amounts to nothing more than a fishing expedition as there are not allegations that the individual South Charleston police officer Defendants' arrest of plaintiff was racially motivated.

Plaintiff urges in requesting that the Court order Defendants to respond to these discovery requests that he states in his pleadings, and it is otherwise evident, that Defendants "were improperly motivated by racial prejudice and/or pressure from Walmart" and that "[t]he essence of a claim for malicious prosecution is improper motive." (Document No. 20, pp. 5 - 6.) Plaintiff refers to Defendants' answer to his Interrogatory No. 9 as supporting his contention respecting their potential motives.[2] (Id., p. 7.) Plaintiff asserts that the information requested in Interrogatories 4 and 5 and Request for Production No. 7 is therefore "clearly relevant to his claims of malicious prosecution * * * and therefore falls within the scope of permissible discovery under Fed. R. Civ. P. 26(b)(1)." (Id.) Finally, Plaintiff contends that, contrary to Defendants' claim that the discovery requests are overly broad, "the discovery requests at issue were narrowly tailored to the facts of the instant case as they requested information concerning persons reported by Walmart suspected of theft and embezzlement over a period of ten years. (Id., p. 8.)

By their Response (Document No. 21.), Defendants contend that "a review of the Complaint reveals the allegations against the Defendants are vague and conclusory rendering Plaintiff's discovery requests nothing more than a fishing expedition to uncover facts to support the Plaintiff's

---

[2] Plaintiff's Interrogatory No. 9 requested " a description of each and every communication between Walmart's Asset Protection Manager . . . and any officer or agent of the South Charleston Police Department relating to Plaintiff" and other Walmart employees implicated in the theft. Defendants provided a detailed answer. (Document No. 20-1, pp. 7-9.)

improperly pled and factually unsupported claims against the Defendants." (Id., p. 6.) Citing the general rule for pleading a claim for relief as stated at Federal Rule of Civil Procedure 8(a)(2), Defendants contend that Plaintiff's Complaint does not allege facts in support of a claim of malicious prosecution under Section 1983 (Id., pp. 9 - 10.) or under common law (Id., pp. 10 - 11.).[3] Defendants state that "Plaintiff's Complaint contains no factual allegations that lead to the conclusion that the individual police officers arrested him because he was African-American. Similarly, Plaintiff's conclusion that the individual police officers are acting at the behest of Walmart which is discriminating against employees and customers because of their race is based on nothing more than the fact that Walmart is the complaining witness in the underlying criminal action and the suspect/employee is African/American." (Id., p. 11.) Respecting Defendant City of South Charleston, Defendants assert that "[n]owhere in the Complaint at issue does Plaintiff claim that the individual police officer defendants' actions were taken against him based on a specific official's 'policy making authority' or that any of the three police officers themselves possessed final 'policy making authority.'" (Id., p. 12.) Next, Defendants maintain that Interrogatory Nos. 4 and 5 are overly broad and unduly burdensome. (Id., pp. 13 - 17.) In support of their assertion that responding to Plaintiff's Interrogatories would be unduly burdensome, Defendants attach the Affidavit of Sergeant Robert Houck, Assistant Chief of Police of the South Charleston Police Department.

---

[3] The sufficiency of the pleadings under Rule 8(a)(2) is often an issue for consideration in deciding a motion to dismiss under Rule 12(b)(6). *McClearly-Evans v. Maryland Dept. of Transp., State Highway Admin.*, ___ F.3d ___, 2015 WL 1088931 at ** 3-5 (4th Cir.). In fact, as noted above, Defendants challenged the sufficiency of Plaintiff's allegations of malicious prosecution in moving to dismiss, and the District Court denied dismissal of Plaintiff's Complaint on that basis. The undersigned must therefore assume that Plaintiff's allegations are sufficient to state claims for relief under Rule 8(a)(2) and concludes for the purpose of considering Plaintiff's Motion to Compel that Plaintiff has stated a Fourth Amendment wrongful seizure claim and a common law claim of malicious prosecution against the Defendants.

(Document No. 21-1.) Defendants explain that the information requested is available on a computer system utilized by municipal law enforcement agencies in Kanawha County since 2007. (Id., p. 14.) Defendants state that the computer system cannot be searched for information respecting a specific Walmart store. (Id.) It produces information respecting all Walmart stores in the County. When Sergeant Houck searched the system, it produced "788 files from 2007 to the present. Each file has to be opened to determine if it is the proper Walmart and then reviewed to determine if the crime reported is one of the crimes Plaintiff has requested and further reviewed in order to compile who [sic] the identity of Walmart employee who made the Complaint; the identity of the SCPD officer who received the complaint and/or investigated the complaint and the charges that were filed." (Id., pp. 14 - 15.) Defendants further state that police officers do not always indicate the race of a suspect; information from 2004 through 2006 exists in "paper files . . . indexed by file number, not by business, name, automobile or address"; and the files do not contain information respecting Court proceedings. (Id., p. 15.) Defendants estimate that the cost of gathering information responsive to Interrogatory Nos. 4 and 5 would be about $12,000. (Id., p. 16.) Further work (searching Court files and copying documents) would add to this cost. (Id.) Plaintiff states that "[t]he cost of responding to Interrogatories 4 and 5 as drafted is clearly unreasonable and burdensome particularly in light of the fact that Plaintiff has failed to provide any factual support for the allegations set forth in the Complaint which would entitle him to this information." (Id.) Finally, Defendants assert that Plaintiff can obtain the information he is requesting more easily through discovery in his civil suit against Walmart in the Circuit Court of Kanawha County. (Id.) Defendants state that "responding to Plaintiff's Interrogatories 4 and 5 and the associated Requests for Production will exact a heavy cost against the City of South Charleston not only in terms of the financial burden, but also in terms

of the significant impact the reallocation of resources necessary to respond to the instant interrogatories will have on the efficient operation of the South Charleston Police Department." (Id., p. 17.)

The Court held a hearing upon Plaintiff's Motion to Compel on Friday March 13, 2015. The parties basically reiterated the claims and assertions which they had made in their briefs. The Court determined that Plaintiff's Motion to Compel should be granted in part to require Defendants to provide information responsive to Request for Production No. 7 respecting writings alleging that an agent or employee of the South Charleston Police Department had engaged in racial profiling and/or racial discrimination against any person. The Court required that Defendants produce the requested information for a period of five years before the circumstances occurred which are the basis for Plaintiff's lawsuit and do so within two weeks of the hearing (by March 27, 2015). The Court further determined that Plaintiff's Motion should be denied provisionally respecting Plaintiff's Interrogatory Nos. 4 and 5. Specifically, the Court allowed that if the information responsive to Request for Production No. 7 revealed that numerous complaints charged that the South Charleston Police had engaged in racial profiling and/or racial discrimination, the Court would consider whether or not to require Defendants to provide the information which Plaintiff requested in Interrogatory Nos. 4 and 5 though perhaps for a lesser period of time than Plaintiff requested (10 years).

## DISCUSSION

The threshold consideration in resolving any dispute respecting information which a party is seeking in discovery is whether the information is within the scope of discovery as contemplated by Federal Rule of Civil Procedure 26(b)(1). That Rule provides as follows respecting the scope of discovery:

8

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Discovery is generally limited therefore to nonprivileged information which is relevant to any party's claims or defenses, and relevant information is information which is admissible at trial or might reasonably lead to the discovery of information which is admissible at trial. See State ex rel. Erie Ins. Property and Cas. Co. v. Mazzone, 218 W.Va. 593, 596, 625 S.E.2d 355, 358 (2005)("A threshold issue regarding all discovery requests is relevancy. This is so because '[t]he question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried.'" quoting Syllabus Point 4 of State Farm Mut. Auto. Ins. Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992).) Rule 26(b)(1) envisions two levels of relevancy – relevancy to any party's claims or defenses and relevancy to the subject matter involved in the action. Relevancy to claims or defenses is narrower than relevancy to subject matter as is evident from the Advisory Committee Notes. In amending this Rule in 2000, the Advisory Committee wrote as follows:

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information.

> Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

Relevant matters are therefore ones which relate to a party's claim or defense. Relevancy does not extend more broadly to the subject matter of the action unless the Court orders it upon a finding of good cause. Upon this framework, relevancy is conceptually broad. Information is relevant if there is any possibility that it might relate to a claim or defense of any party. When requested information appears relevant, the party objecting to providing it must demonstrate that the information has no bearing upon a claim or defense of any party or circumstances contemplated by Rule 26(b)(2)(C) exist. See Desrosiers v. Mag Industrial Automation Systems, LLC, 675 F.Supp.2d 598, 601 (D.Md. 2009). Rule 26(b)(2)(C) provides that the Court is required to impose limitations upon the frequency or extent of discovery within the scope of Rule 26(b)(1) as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the

>parties' resources, the importance of the issues at stake in the action, and the importance if the discovery in resolving the issues.

"District Courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." Hinkle v. City of Clarksburg, West Virginia, 81 F.3d 416, 426 (4th Cir. 1996).

The Fourth Circuit Court of Appeals stated in Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000), that "[t]he common law tort of malicious prosecution is well established. A prima facie case of malicious prosecution must include (1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice. Two forms of malice may be evident in a common law malicious prosecution case: legal malice which may be inferred from a lack of probable cause and actual malice. Proof of the latter is necessary for an award of punitive damages. See Bennett v. R & L Carriers Shared Services, LLC, 492 Fed.Appx. 315, 329 and 334 (4th Cir. (Va.) 2012)(considering Virginia law). Common law malicious prosecution is not itself redressable under § 1983 . . .." Considering decisions of the United States Supreme Court and Courts of Appeals including its decision in Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996), the Fourth Circuit in Lambert concluded that "there is no such thing as a '§ 1983 malicious prosecution' claim. What we termed a 'malicious prosecution' claim in Brooks is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution – specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. * * * It is not an independent cause of action." Lambert v. Williams, 223 F.3d at 262 (citation to *Brooks* and footnote omitted.). It appears that a Fourth Amendment wrongful seizure claim basically incorporates three of the elements of a common law malicious prosecution

11

claim as a plaintiff must demonstrate that the defendant obtained by affidavit of a Warrant for the plaintiff's arrest, plaintiff was arrested and it was determined favorable to the plaintiff that probable cause was lacking to support the obtaining of the Warrant. See Miller v. Prince George's County, Md, 475 F.3d 621 (4th Cir. 2007). Malice is not an element of a Fourth Amendment wrongful seizure claim. Rather, a plaintiff must demonstrate that the defendant acted deliberately or recklessly in disregard of the truth in submitting the affidavit in support of the Arrest Warrant. Miller v. Prince George's County, Md, 475 F.3d at 627.

Plaintiff states a Fourth Amendment wrongful seizure claim and a common law malicious prosecution claim alleging that in charging and seeing to his arrest, Defendants were "motivated by prejudice and/or animus, whether against Plaintiff Robinson personally or because of his race." The information which Plaintiff seeks in support of this allegation does not relate directly to the proximate facts underlying his claims. Rather, it is historical or background information and arguably of limited evidentiary value. It is nonetheless germane to the "deliberate or reckless disregard" element of his Fourth Amendment wrongful seizure claim and the malice element of his common law malicious prosecution claim as it will evidence whether or not complaints have been made by others that the police officers who are Defendants in this matter engaged in racial profiling or discrimination and may evidence whether or not such complaints have been made by persons subject to police action on the basis of Walmart complaints. The Court will therefore allow Plaintiff's inquiry contained in his Request for Production No. 7 respecting claims asserting that South Charleston Police Officers engaged in racial profiling and discrimination. If it appears that such claims have been made by other persons about whom Walmart has complained, the Court will consider allowing Plaintiff further limited inquiry similar to that contained in his Interrogatories 4

and 5 taking into consideration the extent to which Plaintiff has obtained or may obtain the same or more accurate information more cost effectively in his civil suit against Walmart in the Circuit Court of Kanawha County.

It is accordingly hereby **ORDERED** that Plaintiff's Motion to Compel (Document No. 20.) is **GRANTED in part** and provisionally **DENIED in part**. Defendants shall have by this date (Friday, March 27, 2015) provided information responsive to Request for Production No. 7 respecting writings alleging that an agent or employee of the South Charleston Police Department engaged in racial profiling and/or racial discrimination against any person for a period of five years before the circumstances occurred which are the basis for Plaintiff's lawsuit (July, 2007 to July, 2012). Plaintiff's Motion is denied provisionally respecting Plaintiff's Interrogatory Nos. 4 and 5. If the information responsive to Request for Production No. 7 reveals that numerous complaints charged that the South Charleston Police engaged in racial profiling and/or racial discrimination for the period of time from July, 2007, to July, 2012, the Court will reconsider allowing Plaintiff further limited inquiry similar to that contained in his Interrogatories 4 and 5 taking into consideration the extent to which Plaintiff has obtained or may obtain the same or more accurate information more cost effectively in his civil suit against Walmart in the Circuit Court of Kanawha County.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: March 27, 2015.

R. Clarke VanDervort
United States Magistrate Judge