**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

GREGORY ROBINSON,

               Plaintiff,

v.                                CIVIL ACTION NO.   2:14-cv-00330

S.W. MILLER, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court, on remand from the Fourth Circuit, is Defendants' motion for summary judgment. (ECF No. 34.) For the reasons discussed herein, the Court **DENIES** Defendants' motion. (ECF No. 34.)

*I.     BACKGROUND*

On September 10, 2015, the Court issued a memorandum opinion in the above-styled matter denying Defendants S.W. Miller ("Defendant Miller"), E.M. Peterson ("Defendant Peterson"), E.R. Moyer ("Defendant Moyer"), and City of South Charleston's ("Defendant City") motion for summary judgment, (ECF No. 34), and granting in part and denying in part Plaintiff's motion for partial summary judgment, (ECF No. 36). (ECF No. 125.) On appeal, the Fourth Circuit vacated in part that memorandum opinion finding that this Court incorrectly applied a subjective standard in determining whether probable cause existed for Plaintiff's arrests and

remanded the case so the Court can conduct an objective inquiry into probable cause. (ECF No. 134.)

A. *Factual Background*

On July 16, 2012, Defendant Miller, a patrolman with the South Charleston Police Department (the "Police Department"), was dispatched to the Walmart Supercenter in South Charleston, West Virginia ("Walmart"), in response to a report of employee theft. (ECF No. 39 at 2; *see also* ECF No. 97 at 1.) When he arrived at Walmart, Defendant Miller met with Paul Higginbotham—the Walmart Store's Asset Protection Manager (the "Walmart APM"). (ECF No. 39 at 2; ECF No. 97 at 1.) The Walmart APM reported to Defendant Miller that surveillance video showed three employees stealing Apple iPods. (ECF No. 39 at 2; ECF No. 97 at 1.) The Walmart APM then showed Defendant Miller surveillance video of two thefts. (ECF No. 39 at 3.)

The second surveillance video is the only one that is relevant here. This video showed a theft that occurred on July 10, 2012. (*Id.* at 2.) The video depicted three Walmart Store employees—Hartwell, Davis, and Plaintiff—and, as in the first video, showed Hartwell removing iPods from a display case. (*Id.*; *see also* ECF No. 39 at 3.)

Shortly after reviewing the videos, Defendant Miller interviewed Davis at Walmart. (ECF No. 39 at 3.) Defendant Miller later testified that Davis provided a statement to him at this time, in which Davis noted that "he knew . . . Hartwell was taking the iPods and even offered to give [Davis] one." (ECF No. 34-3 at 42:19–43:22 (Miller Dep.).) Defendant Miller did not speak with either Hartwell or Plaintiff before leaving Walmart, as they "were both off work that day." (ECF No. 39 at 3.)

On July 18, 2012, Defendant Miller applied for a warrant for Hartwell and arrested him that same day. (ECF No. 97 at 2.) Either on or after this date, Hartwell provided the following signed statement on a Police Department investigative statement form (the "Hartwell Statement"):

> [Plaintiff] and [Davis] talked me into doing it again. They were suppose [sic] to cover me and block the cameras under the agreement I would give them each one of the Ipods.

(ECF No. 34-7.)

On July 19, 2012, Defendant Miller applied for arrest warrants for Davis and Plaintiff. (ECF No. 97 at 2; ECF No. 37 at 2.) As part of the warrant application for Plaintiff, Defendant Miller submitted a criminal complaint with an accompanying affidavit (the "First Warrant Application"). (ECF No. 34-1 (First Warrant Application).) This criminal complaint alleges that, "[o]n or about 07-12-2012 in Kanawha County, West Virginia," Plaintiff committed the offenses of embezzlement in violation of West Virginia Code § 61-3-20 and fraudulent schemes in violation of West Virginia Code § 61-3-24d. (*Id.* at 1.) This criminal complaint incorporates the attached First Warrant Affidavit, which was in all respects identical to the affidavits Defendant Miller submitted to procure the arrests of Hartwell and Davis and provides the following, in its entirety:

> On Monday 16th day of July 2012, I was dispatched to Wal-Mart located at 2700 Mountaineer Blvd. for a report of employee stealing. Upon arrival I spoke with listed comp. Paul Higginbotham the store APM who stated that 3 employees had been stealing Apple IPods and accessories from the electronic department. Mr. Higginbotham stated that when he reviewed the surveillance videos on Thursday 12th day of July and saw that on Friday July 6th he saw [sic] listed suspect #1 Jeremy Hartwell and listed suspect #2 Jirald Davis were observed [sic] proceeding towards the MP3 player display case. At around 11:54 hours, both suspects begin to look around the department and act in a suspicious manner. Mr. Davis then turns his back to Mr. Hartwell who uses the department keys and enters the MP3 display case. While Mr. Hartwell enters the case Mr. Davis begins to stretch and places his arms above his head and continues to look around the department. As

a customer's [sic] approaches Mr. Davis proceeds to their location and directs then [sic] away from the electronics counter and MP3 player display case.

Mr. Hartwell then enters the display case and begins to select Apple IPods where he is then observed concealing the merchandise into his left pocket. Mr. Davis then turns around and observes the activity taken [sic] place and selection and concealment of the merchandise. Mr. Hartwell continues to select additional IPods, also placing them into his pant pocket. After Mr. Hartwell finishes his selection and concealment both suspects walks [sic] away from the area.

The second incident happened on Tuesday July 10th were [sic] Mr. Hartwell was standing by the same display case. Mr. Hartwell then proceeded towards the MP3 display case around 2114 hours along with suspect #3 [Plaintiff] and Mr. Hartwell enters the case at 2115 hours and Mr. Davis immediately proceeds over to the same location where he begins to talk to [Plaintiff]. At 2116 hours Mr. Hartwell begins to select merchandise (IPods) from the display case concealing them into the right pants pocket and Mr. Davis continues to observe him and distract the other associate from noticing the activity. After concealing the items Mr. Hartwell closes the display case at 2117 hours and Mr. Davis proceeds to walk away towards the electronics register.

Mr. Higginbotham stated after reviewing several other days of surveillance video from Mr. Hartwell's shifts over previous weeks and Asset Protection working with ZMS Seth McCormick to verify on-hands and PI accuracy of Apple IPods in the display case and comparing to surveillance video of the selection and concealment of merchandise, an event value was entered into the case file of $1975.00 for a total of 8 items. I spoke with Mr. Davis in the LP office at Wal-Mart and before he could be given his Miranda's Warning he stated he knew Mr. Hartwell was taking the items and even offered to give him one but Mr. Davis stated he didn't take any and didn't help Mr. Hartwell. There are videos of all the items that were taken by Mr. Hartwell. I will be obtaining warrants on all 3 suspects for Embezzlement and Fraudulent Schemes.

On Tuesday 17th day of July 2012, I spoke with Greg Eads who works at Kanawha Valley Fine Jewelry #4 in Dunbar and he stated that Jeremy Hartwell had sold them a [sic] Apple Touch 64GB IPod and the numbers match with the ones that he stole from Wal-Mart. While looking at his other IPod in the case I found one that was similar to the one that Mr. Hartwell had sold them, the numbers match the ones that were stolen by Mr. Hartwell. Mr. Eads stated that a girl name [sic] Billie Joe Jones Ohio ID# RP283283 had sold it to them the same day that Mr. Hartwell sold his. This occurred at Wal-Mart located at 2700 Mountaineer Blvd. South Charleston, WV 25309 Kanawha County.

(ECF No. 34-1 at 2.) Defendant Miller did not provide any additional oath or affirmation

detailing the facts surrounding these incidents other than the First Warrant Affidavit—and the

accompanying criminal complaint—when procuring an arrest warrant for Plaintiff. (*See* ECF No. 35 at 2; ECF No. 97 at 2.)

A Kanawha County magistrate judge subsequently issued warrants for Hartwell, Davis, and Plaintiff. (ECF No. 35 at 2.) The magistrate judge issued the warrant for Plaintiff (the "First Warrant") based on the First Warrant Application. (*Id.*) Plaintiff's preliminary hearing was scheduled for August 8, 2012. (*Id.*) Neither the Walmart APM nor Defendant Miller appeared at the preliminary hearing. Thus, the charges were dismissed without prejudice. (*Id.*; *see also* ECF No. 37 at 5.)

Sometime between August 8, 2012 and November 20, 2012, Defendants Peterson and Moyer spoke with the Walmart APM regarding Plaintiff. (ECF No. 39 at 5.) Defendant Peterson testified that the Walmart APM mentioned to Defendants Peterson and Moyer that he attempted to contact Defendant Miller following Plaintiff's August 8, 2012, but was unsuccessful. (*See id.*; *see also* ECF No. 34-5 at 128:8–15 (Peterson Dep.).) Defendant Peterson also testified that, during one such conversation, the Walmart APM asked Defendants Peterson and Moyer to "handle" the issue with Plaintiff. (*See* ECF No. 39 at 5; *see also* ECF No. 34-5 at 133:2–6 (Peterson Dep.).)

Following these conversations, Defendants Peterson and Moyer consulted with one of two prosecutors—either Assistant Prosecuting Attorney Joey Spano or Assistant Prosecuting Attorney Reagan Whitmyer—by telephone before seeking a new arrest warrant for Plaintiff. (*E.g.*, ECF No. 34-5 at 117.) Based on this conversation, the prosecutor told Defendants Peterson and Moyer to re-file charges against Plaintiff. (*See id.*)

On November 20, 2012, Defendants Peterson and Moyer filed an arrest warrant application against Plaintiff (the "Second Warrant Application"). (ECF No. 35 at 2.) As with the First Warrant Application, the Second Warrant Application similarly included a criminal complaint with an accompanying affidavit. (ECF No. 34-2.) This second criminal complaint alleges that "[o]n or about 10,12 [sic] July 2012 in Kanawha County, West Virginia," Plaintiff committed offenses "in violation of W. Va. Code . . . §61-3-20, §61-3-24d." (*Id.* at 1.) The Second Warrant Affidavit also includes a "facts" section that is almost identical to the First Warrant Affidavit and provides the following, in its entirety:

> On 16 July 2012, Ptlm. SW Miller was dispatched to Wal-Mart Located at 2700 Mountaineer Blvd. South Charleston, Kanawha County WV, for a report of employee theft. Upon arrival Miller spoke with Wal-Mart asset protection manager Paul Higginbotham (complainant) who states that three employees had been stealing Apple I Pods and accessories from the electronic department. Higginbotham stated that he reviewed video surveillance on 06 July 2012 and observed Jeremy Hartwell (co-defendant) and Jirald Davis (defendant) proceed toward the MP3 player display case in the electronic section of the store and begin to look around the area in a suspicious manner. Davis then turns his back to Hartwell who uses department keys and enters the MP3 display case. Hartwell enters the case and Davis begins to stretch and place his arms about his head while looking around the area. When a customer approaches the area Davis is observed directing their attention away from the electronics counter where Hartwell has selected an Apple I-Pod and concealed it in his left pocket. Davis then watches as Hartwell selects additional Apple I-Pods and conceals them in his pocket, after the selection and concealment of the Apple I-Pods both defendants then walk away from the area.
>
> On 10 July 2012 Hartwell was observed on video surveillance by Higginbotham again at the same MP3 display case. Hartwell with [Plaintiff] (co-defendant) present again enters the case selecting and concealing Apple I-Pods into his right pant pocket. Davis again is immediately observed coming to the location, speaking with [Plaintiff], and appears to distract the other associates from noticing the activity.
>
> Higginbotham states after completing their internal investigation that eight Apple I-Pods were taken with a total loss to Wal-Mart of $1975.00. On 17 July 2012 Miller recovered two of the Apple I-Pods from Greg Eads who works at Kanawha Valley Fine Jewelry and Loan in Dunbar. Eads states that Hartwell brought in one of the stolen Apple I-Pods in for sell [sic] and then the same day a

female brought in another of the stolen I-Pods for sell [sic]. Both Hartwell and the female sold the items to KVP and were given $150.00 US currency for each transaction. [Plaintiff] is charged with embezzlement and fraudulent schemes.

(*Id.* at 2–3.)

A magistrate judge subsequently issued an arrest warrant for Plaintiff (the "Second Warrant"), as well as a warrant for Davis. (ECF No. 35 at 3; *see also* ECF No. 97 at 4.) On November 28, 2012, Plaintiff and Davis voluntarily turned themselves in and were arraigned. (ECF No. 97 at 4.) Their preliminary hearing was set for December 13, 2012. (*Id.*) At this preliminary hearing, Davis took a plea bargain. (*Id.*) However, Plaintiff asked for a continuance which was granted. (*Id.*)

Plaintiff's preliminary hearing was held on January 10, 2013. (ECF No. 35 at 3.) Although Defendants Peterson and Moyer were present at the hearing, they were never called to testify. (ECF No. 97 at 4.) At the conclusion of this hearing, the magistrate judge dismissed the case without prejudice for lack of probable cause. (*See id.*; *see also* ECF No. 39 at 6.)

B. *Procedural Background*

On December 13, 2013, Plaintiff filed the instant Complaint against Defendants in the Circuit Court of Kanawha County, West Virginia, alleging the following five counts: deficient-affidavit, false arrest, and § 1983 malicious prosecution against Defendant Miller (Count I); deficient-affidavit, false arrest, and § 1983 malicious prosecution against Defendants Peterson and Moyer (Count II); § 1983 supervisory liability claim against Defendant City of South Charleston ("Defendant City")[1] (Count III); state law malicious prosecution claim against Defendant Miller

---

[1] Count III also includes a claim that Defendant City "is vicariously liable for the negligence of [the Individual Defendants] in depriving Plaintiff . . . of his constitutional rights and privileges." (ECF No. 1-2 at 12 ¶ 52.) However, the Court dismissed this claim during a March 10, 2015, hearing in this case. (*See* ECF Nos. 83, 85.)

(Count IV); and state law malicious prosecution claim against Defendants Peterson and Moyer (Count V). (*See* ECF No. 1-2.)

On December 22, 2014, Defendants filed a motion for summary judgment. (*See* ECF No. 34.) Plaintiff subsequently filed a motion for partial summary judgment. (*See* ECF No. 36.) In this Court's previous memorandum opinion on those motions, the Court granted in part Plaintiff's summary judgment motion, (ECF No. 36), insofar as it requested summary judgment on the deficient-affidavit claim against Defendant Miller in Count I and denied in part the motion insofar as it requested summary judgment on the deficient-affidavit claim against Defendants Peterson and Moyer in Count II. (ECF No. 125 at 77–78.) The Court further denied Defendants' motion, (ECF No. 34), in its entirety. (ECF No. 125 at 78.)

The Court found that as to the deficient-affidavit claims contained in Counts I and II of the Complaint, both the First Warrant Affidavit and Second Warrant Affidavit lacked probable cause. (*Id.* at 25, 29–30.) Thus, the Court further found that Plaintiff satisfied the two elements of a § 1983 claim regarding the Individual Defendants' submission of the facially unconstitutional First Warrant Affidavit and Second Warrant Affidavit. (*Id.* at 27.) The Court established that Defendant Miller was not shielded from liability for the deficient-affidavit claim based on the doctrine of qualified immunity and granted Plaintiff's Motion for Summary Judgment on that claim in Count I. (*Id.* at 27, 30.) The Court left to the trier of fact whether Defendants Peterson and Moyer are entitled to qualified immunity as to the deficient-affidavit claim in Count II because (1) there is contradictory evidence as to whether Defendants Peterson and Moyer read the entirety of Plaintiff's file to the prosecutor with whom they consulted or merely provided a summary of the facts of the case, and (2) it is unclear whether the consultation occurred before or after they

drafted the Second Warrant Affidavit, which edited an otherwise exculpatory statement from the First Warrant Affidavit.    (*See id.* at 41–44.)

As to the malicious prosecution claims against the Individual Defendants contained in Counts I and II,[2] the Court determined that genuine issues of material fact existed "as to what Defendant Miller knew at the time he arrested Plaintiff" and as "to the knowledge of Defendants Peterson and Moyer at the time they arrested Plaintiff."    (*Id.* at 52, 55.)    The Court found that this precluded a determination of whether the Individual Defendants had probable cause to arrest Plaintiff.    (*Id.*)    In determining whether the Individual Defendants were entitled to qualified immunity on these claims, the Court discussed the "'objective legal reasonableness' of the Individual Defendants' actions in arresting Plaintiff."    (*Id.* at 57 (citing *Messerschmidt v. Millender*, 565 U.S. 535 (2012)).)    The Court explained that "one situation where defendants will not be protected by the shield of qualified immunity when executing a warrant is 'if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'"    (*Id.* at 57–58 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (citation omitted)).)    The Court found genuine issues of material fact as to "whether a reasonable police officer [in the position of the Individual Defendants] could have believed that there was probable cause to arrest Plaintiff."    (*Id.* at 59, 62–63.)    Thus, the Court denied Defendants' motion for summary judgment insofar as it requested summary judgment on the § 1983 malicious prosecution claims in Counts I and II.    (*Id.* at 59, 63.)

---

[2]  While the Court refers to these claims as "malicious prosecution" claims, the Court recognizes that this § 1983 claim is "properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort."    *See Lambert v. Williams*, 223 F.3d 257, 261–62 (4th Cir. 2000) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)).    Thus, the Court styles it as a § 1983 malicious prosecution claim but does not treat it separate and distinct from the constitutional allegations alleged in Counts I and II because the foundation of the claim is a seizure in violation of the Fourth Amendment.    *Cf. id.*

The Defendants' motion further requested summary judgment on Counts III, IV, and V. The Court denied the motion related to Count III after finding that "the constitutional requirements pertaining to providing an oath or affirmation supporting a finding of probable cause for arrest warrants and having probable cause to arrest an individual are so obvious that a municipality's failure to train its officers regarding these constitutional limitations constitutes deliberate indifference" and that "there are genuine issues of material fact as to whether Defendant City does, in fact, train its officers regarding these constitutional limitations." (*Id.* at 74.) The Court similarly denied Defendants' motion seeking summary judgment on Counts IV and V related to Plaintiff's common law malicious prosecution claims because it found genuine issues of material fact as to the third and fourth elements of a common law malicious prosecution claim. (*See id.* at 75–77.) Specifically, the Court found that "the record is riddled with inconsistencies and questions of fact as to what knowledge the Individual Defendants possessed when they executed the respective arrests of Plaintiff." (*Id.* at 76.) This precluded the Court from determining whether the Individual Defendants arrested Plaintiff without probable cause and with malice. (*Id.* at 77.)

Defendants filed a notice of appeal on October 7, 2015, assigning error in the Court's memorandum opinion insofar as it granted Plaintiff's motion for partial summary judgment against Defendant Miller on the deficient-affidavit claim in Count I and denied Defendants' motion in its entirety. (ECF No. 129.) The Fourth Circuit addressed the applicable law in deciding that this Court incorrectly applied a subjective standard to the probable cause question and examined this Court's analysis of whether the Individual Defendants were entitled to qualified immunity related to the malicious prosecution claims contained in Counts I and II. (*See* ECF No. 134 at 8.)

The Fourth Circuit explained that "probable cause to justify an arrest turns on the 'facts and circumstances' known to the officer at the time of the arrest and whether those known facts give rise to a 'fair probability' that the suspect has committed a crime." (*Id.* (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013)).) The court then noted that "probable cause is measured objectively, not subjectively." (*Id.* at 9 (citing *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)).) The court elaborated on this point, stating that "[w]hile we 'examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act[,] we do not examine the subjective beliefs of the arresting officers to determine whether *they* thought that the facts constituted probable cause.'" (*Id.* (emphasis and alteration in original) (citing *Gray*, 137 F.3d at 769).)

The Fourth Circuit then held that this Court took "a distinctly subjective approach to the probable cause determination." (*Id.*) The Fourth Circuit noted that, despite the importance of the images from the Walmart surveillance video to the Individual Defendants' determination that probable cause existed, this Court did not watch the video and, thus, "could not determine for itself whether the video contributed to probable cause as an objective matter." (*Id.*) Because this Court considered instead "whether the *officers* 'interpreted' the video as suggestive of Robinson's involvement in the theft," (*id.* (emphasis in original) (citing ECF No. 125 at 49, 54, 59 n.13)), it incorrectly determined that a material fact remained as to "how the Individual Defendants subjectively interpreted the surveillance video." (*Id.* at 10 (citation omitted).)

After determining that this Court incorrectly applied a subjective test to the determination of probable cause, the Fourth Circuit vacated this Court's "denial of qualified immunity to the

officers on [Plaintiff]'s claim that he was arrested without probable cause." (*Id.*) The Fourth Circuit vacated that part of the memorandum opinion and remanded for this Court to "undertake the requisite objective inquiry into probable cause."[3] (*Id.* at 11.) As such, the Court must now reassess Defendants' motion for summary judgment.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment.[4] That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."

---

[3] The Fourth Circuit also recognized, without expressing its view, that this Court's conclusion on whether probable cause existed for Plaintiff's arrest may affect other claims addressed in the Court's September 10, 2015, memorandum opinion:

> For instance, probable cause is sufficient to justify a public arrest under the Fourth Amendment, regardless of the validity of the arrest warrants obtained by the officers or any deficiencies in the affidavits supporting them. *See Graves v. Mahoning Cty.*, 821 F.3d 772, 774–76 (6th Cir. 2016). And whether the officers in fact arrested [Plaintiff] without probable cause also may be relevant to [Plaintiff's] failure-to-train claim against the City and to his state-law malicious prosecution claims.

(ECF No. 134 at 11.)

[4] The Court reiterates the following from its previous memorandum opinion and order regarding Defendants' briefing:

> In the "Standard of Review" sections in Defendants' briefing regarding Defendants' motion, Defendants repeatedly suggest that the appropriate standard is a curious amalgamation of the standards applicable to motions for judgment as a matter of law and motions for judgment notwithstanding the verdict. (*See* ECF No. 35 at 3–4; ECF No. 97 at 6.) However, Defendants' motion—read as a whole—clearly indicates that this filing is a motion for summary judgment. (*See* ECF No. 35.) As such, despite the apparently errant standard proffered in Defendants' briefing, the Court construes Defendants' motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and shall apply the appropriate standard for such a motion.

(ECF No. 125 at 12–13.)

*News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252. However, if the nonmoving party is entitled to judgment, summary judgment may be properly rendered if the original movant had adequate opportunity to show that a genuine factual dispute remains and

that the nonmoving party is not entitled to judgment as a matter of law.   *See Calvert v. W. Va.*

*Legal Servs. Plan, Inc.*, 464 F. Supp. 789, 790–91 (S.D. W. Va. 1979) (citations omitted).

## II.   DISCUSSSION

Given the Fourth Circuit's opinion, the Court must re-determine if the Individual

Defendants arrested Plaintiff on a probable cause basis and, if so, whether they are shielded from

liability under the doctrine of qualified immunity.[5]   The Fourth Circuit summarized the specific

question presented for this Court to address as follows:

> The only relevant question is whether 'reasonable and prudent persons,' viewing
> the video along with any other evidence within the knowledge of the officers at the
> time of [Plaintiff's] arrest, would be warranted in believing to a fair probability that
> [Plaintiff] had engaged in criminal activity.   *Gray*, 137 F.3d at 769.   And if the
> question is sufficiently close that an objectively reasonable officer could conclude
> that probable cause existed, then the individual defendants are entitled to qualified
> immunity.   *See, e.g.*, *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001).

(ECF No. 134 at 10.)   As the Fourth Circuit noted, this Court's decision on whether probable

cause exists could potentially affect Plaintiff's failure-to-train claim against the City and Plaintiff's

common law malicious prosecution claims.   Therefore, the Court will address each count of the

Complaint individually.

A.   *False Arrest and § 1983 Malicious Prosecution Claim Against Defendant Miller (Count I)*

Count I of the Complaint alleges that Defendant Miller "arrested Plaintiff . . . without

probable cause and deprived him of liberty without due process in violation of the United States

Constitution and the West Virginia Constitution."   (ECF No. 125 at 45 (quoting ECF No. 1-2 at

¶¶ 33, 44).)   In their motion for summary judgment, Defendants argue that Defendant Miller had

---

[5]  The Court found in its previous opinion that "the Individual Defendants were acting under color of law at the time
of these arrests."   (ECF No. 125 at 45–46 (citations omitted).)   Thus, the Court need not address that in this opinion.

14

probable cause to arrest Plaintiff and thus Defendant Miller is entitled to qualified immunity as to Plaintiff's false arrest and malicious prosecution claims in Count I.[6]

"The doctrine of qualified immunity shields officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known."   *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).   In determining whether qualified immunity applies, the Court must look at whether the plaintiff has demonstrated that a depravation of a constitutional right has occurred and whether that right was clearly established at the time of the alleged violation. *See Curtis v. Devlin*, No. 1:04-CV-409, 2005 WL 940571, at *7 (E.D. Va. Apr. 19, 2005).   A court may address either prong of the qualified immunity analysis first.   Here, the Court will first address whether Plaintiff's constitutional rights were violated before turning to whether those rights were clearly established.

### 1.    Whether Plaintiff's Rights Were Violated

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."   U.S. Const. amend. IV.   A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause.   *See Dunaway v. New York*, 442 U.S. 200, 213 (1979).   "If a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues."   *Rogers*, 249 F.3d at 290 (citing *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996)).

---

[6]  As Plaintiff's § 1983 malicious prosecution claim is wholly derivative of Plaintiff's unreasonable seizure claim for qualified immunity purposes, the Court will analyze it in conjunction with Plaintiff's unreasonable seizure claim. *See Rogers*, 249 F.3d at 294; *see also Lambert*, 223 F.3d at 262.

The Court noted in its previous opinion that "the determination and existence of probable cause is a 'practical, nontechnical conception,' and it involves 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" (ECF No. 125 at 21 (quoting *Gomez v. Atkins*, 296 F.3d 253, 262 (4th Cir. 2002) (internal citation omitted)).) It further explained that "[p]robable cause exists when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." (*Id.* at 22 (citing *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) (internal citation omitted)).) "[E]vidence sufficient to convict that individual of the charged offense is not required." *Curtis v. Devlin*, No. 1:04-CV-409, 2005 WL 940571, at *7 (E.D. Va. Apr. 19, 2005) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). "Determining whether the information surrounding an arrest suffices to establish probable cause is an individualized and fact-specific inquiry." (ECF No. 125 at 48 (quoting *Wadkins*, 214 F.3d at 539 (citing *Wong Sun*, 371 U.S. at 479 (1963))).)

In analyzing probable cause, the Court underscores the objective standard that the Fourth Circuit emphasized in deciding "whether 'reasonable and prudent persons,' viewing the video along with any other evidence within the knowledge of the officers at the time of [Plaintiff's] arrest, would be warranted in believing to a fair probability that [he] had engaged in criminal conduct." (ECF No. 134 at 10 (citing *Gray*, 137 F.3d at 769).) In this sense, the existence of probable cause at the time of Plaintiff's arrests "turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed

by that conduct." *Rogers*, 249 F.3d at 290 (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)).

Presence at a crime scene or accompanying someone who engages in criminal activity, without more, is insufficient to establish probable cause. *See Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (citing *United States v. Garcia*, 848 F.2d 58, 60 (4th Cir. 1988)). While the context in which circumstances occur may convert "seemingly innocent activity" into a basis for a finding of probable cause, "a person's mere propinquity to others independently suspected of criminal activity," without more, will not establish probable cause. *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *United States v. Thomas*, 913 F.2d 1111, 1116 (4th Cir. 1990)).

Here, Plaintiff was arrested for the felony embezzlement and larceny through a fraudulent scheme. (*See* ECF No. 34-1 at 1.) Under West Virginia law, a person commits larceny through a fraudulent scheme when he or she "willfully deprives another of any money, goods, property or services by means of fraudulent pretenses, representations or promises." W. Va. Code § 61-3-24d(a). Similarly, a person is guilty of embezzlement when he or she is an agent of a company and "embezzles or fraudulently converts to his or her own use . . . money or . . . property of any other person" which is in his or her possession or care by virtue of his or her employment. W. Va. Code § 61-3-20.

Before applying for the first arrest warrant for Plaintiff, Defendant Miller states that he did the following:

> 1) took a statement from [the Walmart APM]; 2) reviewed the surveillance videotape with [the Walmart APM]; 3) talked to Davis; 4) located at least 7 of the iPods at a pawn shop; 5) arrested and interviewed Jeremy Hartwell and obtained a written statement from him implicating Plaintiff and Davis in the theft and 6) arrested Davis.

(*See* ECF No. 101 at 4.)    However, in his deposition, Defendant Miller stated that he did not rely on Hartwell's statement that Plaintiff was acting in concert with Hartwell and Davis when making his initial decision to arrest Plaintiff.    (*See* ECF No. 34-3 at 15.)    Nevertheless, Defendant Miller argues that the above information made it "reasonable for [him] to believe that probable cause existed to apply for a warrant for Plaintiff's arrest."    (*Id.*; *see also* ECF No. 101-1 at 2–3.)

The Court has reviewed the evidence that was available to Defendant Miller, including the two Walmart surveillance videos that are part of the record in this case.[7]    (*See* ECF No. 42-1.) The parties agree that Plaintiff is not present in the first video.    (*See* ECF No. 35 at 1–2; ECF No. 39 at 3.)    However, five seconds into the second video, an individual, who the parties agree is Plaintiff, (*see* ECF No. 35 at 2; ECF No. 39 at 9), appears in the right side of the frame behind the counter wearing a dark blue shirt and khakis.    He walks to a white binder laying open on the counter when Hartwell emerges behind him and walks toward the same cabinet from which he took items in the first video.    They appear to exchange a few words before Hartwell exits the frame to the right.    Upon Hartwell's return, he walks back to the same counter and stands with his hand on it for several seconds.    He appears to squat down as if unlocking the back of the cabinet before standing back up and looking at Plaintiff.    At this point, Plaintiff is flipping through the pages of the binder on the counter.    At the video's two-minute mark, Davis appears in a black shirt and khakis and walks up to Plaintiff while Hartwell squats down and opens up the back of the cabinet where he was standing.    Davis speaks with Plaintiff while Hartwell begins removing items from the cabinet.    Davis then backs up, stretches and looks around as he did in

---

[7]  The files contained on the disc originally sent to the Court were not viewable.    After consultation with this Court's information technology staff and at the Court's request, Defendants' counsel delivered a new disc containing the surveillance videos to the Court on April 7, 2017.

the first video.    While Plaintiff appears to look around at several points when Hartwell is removing items from the display case, Plaintiff never stops flipping through the binder and looks down most of the time.    Toward the end of the video, an individual appearing to be a customer walks up to the display case Hartwell is ducking behind, and Plaintiff walks directly behind Hartwell and then back toward the binder as if talking to the customer.    At that time, Hartwell stands up, closes the cabinet door, and walks out of the frame to the right.    Plaintiff also exits the video at this time.    No employee is visible for the last forty-five seconds of the video.

This video and the other information available to Defendant Miller do not support a finding that Plaintiff acted in concert with Davis and Hartwell to embezzle the iPods.    First, Plaintiff was not in the first video, and there can be no imputation of knowledge to Plaintiff about his co-workers' activities in the first video.

Additionally, any reasonable and prudent person would not believe that Plaintiff's appearance in the second video alone provides a basis to believe that Plaintiff was engaging in criminal activity, particularly larceny.    *Gray*, 137 F.3d 765, 769.    In the second video, Plaintiff simply stood at the counter looking at a binder for the majority of the video.    While he may have looked around at times and assisted a customer in the latter half of the video, these actions are not suspicious behavior for a sales associate.    Further, while Plaintiff was near Hartwell at the time Hartwell was taking electronic devices from the display case, "mere propinquity" to Hartwell's criminal activity or presence at the scene does not create probable cause.    *Taylor*, 81 F.3d at 434 (citations omitted).

Lastly, although the Walmart APM's and Hartwell's statements identify Plaintiff as being part of theft of the iPods, the second surveillance video does not corroborate those statements.    In

fact, the video appears to depict Davis distracting Plaintiff so that Hartwell could steal the iPods and not Plaintiff's inclusion in their scheme.[8]  Therefore, even if Defendant Miller had knowledge of the Walmart APM's and Hartwell's statements, these statements do not weigh toward a finding of probable cause as the other evidence available to Defendant Miller contradicts these statements.

At most, the information available to Defendant Miller gave him reasonable suspicion to investigate Plaintiff, not probable cause to arrest Plaintiff.  *See Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) ("[P]robable cause requires more than 'bare suspicion.'" (internal citations omitted)).  Thus, the Court **FINDS** that Defendant Miller did not have probable cause to arrest Plaintiff and therefore violated Plaintiff's Fourth Amendment right to be free from capricious arrest.  Accordingly, the Court must resolve the first qualified immunity factor in Plaintiff's favor.  The Court will now turn to whether this right was clearly established.

2.  <u>Whether the Right Clearly Established</u>

A constitutional right is clearly established if "the existing authority" makes the "unlawfulness of the conduct manifest."  *See Merchant v. Bauer*, 677 F.3d 656, 665 (4th Cir. 2012) (quoting *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998)).  "The 'salient question' is whether 'the state of the law' at the time of the asserted constitutional violation gave [the defendant] 'fair warning' that his alleged conduct was unconstitutional."  *See Miller v. Prince George's Cty., MD*, 475 F.3d 621, 632 (4th Cir. 2007) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  "Thus, the appropriate question is whether a reasonable police officer could have

---

[8]  This interpretation is further supported by the Walmart APM's statement in which he states that, "associate Jirald Davis continues to observe [Hartwell] and distract the other associate [Plaintiff] from noticing the activity/incident taking place."  (*See* ECF No. 100-1 at 5 (the Walmart APM's Statement.).)

believed that arresting [the person] on [the alleged charges] was lawful, in light of clearly established law and the information the officers possessed." *Id.*; *see also Malley*, 475 U.S. at 341 (stating that "if officers of reasonable competence could disagree on [the] issue" of whether a "reasonably competent officer would have concluded that a warrant should issue," then "immunity should be recognized").

The Fourth Circuit has stated that "[c]ertainly the Fourth Amendment right to be seized only on probable cause was established at the time of the event at issue here." *Humbert v. Mayor of Baltimore City*, 866 F.3d 546, 561 (4th Cir. 2017). Furthermore, the Supreme Court of the United States in *Malley* held that qualified immunity did "not protect an officer who seeks a warrant on the basis of an affidavit that a reasonably well-trained officer would have known failed to demonstrate probable cause—even if the magistrate erroneously issues the warrant." *See Miller*, 475 F.3d at 632 (citing *Malley*, 475 U.S at 345); *see also Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996) ("When an officer acts pursuant to a warrant, the pertinent question is whether the officer could have reasonably thought there was probable cause to seek the warrant." (citing *Anderson v. Creighton*, 483 U.S. 638–39 (1987))).

Defendant Miller argues that he acted reasonably by relying on the warrants issued by a neutral magistrate. "[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[,] . . . [but] the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Messerschmidt*, 132 S. Ct. at 1245.

If a well-trained officer in the defendant's position would have known that his affidavit failed to establish probable cause and that he, therefore should not have applied for warrant, then

the application was not objectively reasonable, and such officer would not be entitled to the defense of qualified immunity. *Malley*, 475 U.S. at 341. In other words, Defendant Miller loses the shield of qualified immunity if it would have been clear to a reasonable officer in his position that he lacked probable cause to arrest Plaintiff for violating West Virginia's felony embezzlement and fraudulent schemes statutes. *See Graham v. Gagnon*, 831 F.3d 176, 182 (4th Cir. 2016); *cf. Rogers*, 249 F.3d at 290. (*See also* ECF No. 1-2 at 4–5 ¶ 10.)

Here, as stated above, a neutral magistrate authorized a warrant for Plaintiff's arrest based on Defendant Miller's First Warrant Affidavit. In this First Warrant Affidavit, Plaintiff only appears in one of the five paragraphs which states the following:

> The second incident happened on Tuesday July 10th were [sic] Mr. Hartwell was standing by the same display case. Mr. Hartwell then proceeded towards the MP3 display case around 2114 hours along with suspect #3 [Plaintiff] and Mr. Hartwell enters the case at 2115 hours and Mr. Davis immediately proceeds over to the same location where he begins to talk to [Plaintiff]. At 2116 hours Mr. Hartwell begins to select merchandise (IPods) from the display case concealing them into the right pants pocket and Mr. Davis continues to observe him and distract the other associate from noticing the activity. After concealing the items Mr. Hartwell closes the display case at 2117 hours and Mr. Davis proceeds to walk away towards the electronics register.

(ECF No. 34-1 at 2.) The rest of the affidavit describes Hartwell's and Davis's actions and the statement from the Walmart APM who stated that he observed Hartwell and Davis on video stealing the iPods.

A reasonable person looking at the information available to Defendant Miller at the time he applied for the arrest warrant would come to the conclusion that there was not probable cause to arrest Plaintiff. As discussed more fully above, completely missing is any information that implicates Plaintiff in Hartwell and Davis's scheme to embezzle the iPods. Defendant Miller's

affidavit indicates the contrary as it states that that Davis distracted Plaintiff while Hartwell was stealing the iPods.[9]

Furthermore, as discussed more fully above, the other statements that Defendant Miller may have relied on during his investigation are not corroborated by the video evidence.  *See supra* Part III.A.1.   Thus, an objectively reasonable officer would not have applied for a warrant for Plaintiff's arrest for felony embezzlement and fraudulent schemes when Plaintiff's actions do not establish any elements of those statutes.  *See Merchant*, 677 F.3d at 665.   As such, Defendant Miller is also not entitled to qualified immunity as to Plaintiff's § 1983 malicious prosecution claim.  *See, e.g.*, *Rogers*, 249 F.3d at 294–95; *see also Mahoney v. Kesery*, 976 F.2d 1054, 1058 (7th Cir. 1992) ("[I]f a reasonable officer would not have believed the person had committed a crime, then the officer, whatever he did or did not believe, is acting contrary to clearly established law and therefore has no immunity.").   Accordingly, the Court **DENIES** Defendants' motion insofar as it requests summary judgment on Count I.

B.    *False Arrest and § 1983 Malicious Prosecution Claim Against Defendants Peterson and Moyer (Count II)*

Defendants Peterson and Moyer argue that they had probable cause to arrest Plaintiff after: (1) they reviewed "the investigation file" created by Defendant Miller; (2) they "watched the [surveillance] video a second time;" (3) they "reviewed the criminal complaint and supporting affidavit;" (4) they reviewed the Hartwell Statement; and (5) they reviewed "the report filed by Walmart" and "the property receipts."   (*See* ECF No. 101 at 4–6; ECF No. 100 at 7–8.)

---

[9]  Defendant Miller asserts that the sentence about Davis distracting Plaintiff was a typo.   (*See* ECF No. 35 at 12.) However, even if it is not true that Davis was distracting Plaintiff, the Court still concludes that there is no probable cause to believe that Plaintiff had committed a crime.

Defendants Peterson and Moyer further assert that the fact that two neutral magistrates found probable cause to authorize arrest warrants for Plaintiff establishes that there was probable cause to arrest Plaintiff.   (*See* ECF No. 42 at 8.)

As discussed more fully above, "[p]robable cause exists when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information— are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed."   *See Wadkins*, 214 F.3d at 539 (internal citation omitted).   The Fourth Circuit has observed that "the question is not whether there actually was probable cause for the warrant . . . but whether an objective law officer could reasonably have believed probable cause to exist."   *Gomez,* 296 F.3d at 261.

Here, as discussed more fully above, the Court finds that there was not probable cause to arrest Plaintiff based on the video of the theft.   *See supra* Part III.A.1.   However, as noted in the Court's previous opinion, there are genuine issues of material fact as to the additional information that Defendants Peterson and Moyer reviewed before arresting Plaintiff.   (*See* ECF No. 125 at 53–55.)   Additionally, and of supreme importance, there are genuine issues of material fact surrounding the conversation Defendants Peterson and Moyer had with the prosecutor who instructed them to re-file charges against Plaintiff.[10]   (*See id.*)   These disputes of fact preclude the Court from determining whether Defendants Peterson and Moyer arrested Plaintiff without probable cause and thus whether Plaintiff's Fourth Amendment rights were violated.   Therefore,

---

[10]  Even if the Court found that Defendants Peterson and Moyer did not have probable cause to arrest Plaintiff, the dispute of fact as to Defendants Peterson and Moyer's conversation with the prosecutor is crucial to the Court's determination of the second prong of qualified immunity.   The Fourth Circuit has repeatedly noted "[t]he most obvious possibility [of exceptional circumstances supporting qualified immunity despite the violation of a clearly established constitutional right] is mistaken official advice by legal counsel."   *Wadkins*, 214 F.3d at 542 (quoting *Pritchett v. Alford*, 973 F.2d 307, 316 (4th Cir. 1992)).

the Court cannot determine whether the doctrine of qualified immunity applies to this Count. This dispute of fact is also material to Plaintiff's § 1983 malicious prosecution claim against Defendants Peterson and Moyer.   Accordingly, the Court **DENIES** Defendant's motion insofar as it requests summary judgment as to Plaintiff's false arrest and § 1983 malicious prosecution claims in Count II.[11]

C.   *Supervisory Liability Claim Against Defendant City (Count III)*

In Count III of his Complaint, Plaintiff alleges that Defendant City failed to properly train the Individual Defendants on the necessary steps in conducting an investigation and the need for law enforcement to independently ensure probable cause exits prior to an arrest.   (*See* ECF No. 1-2 at ¶¶ 52–53.)   Defendant City argues that Plaintiff has failed to show that it had the requisite policy or custom necessary to sustain this claim.   (*See, e.g.*, ECF No. 35 at 16–18.)

As the Court noted in its previous opinion, "[i]n *Monell v. New York City Dep't of Social Services*, . . . the Supreme Court interpreted § 1983 to permit a municipality to be held liable for constitutional deprivations resulting from its employees' conduct."   *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (citing 436 U.S. 658, 694 (1978)); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("[M]unicipalities and other local governmental bodies are 'persons' within the meaning of § 1983." (citing *Monell*, 436 U.S. at 689)).   "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights."   *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (citing *Spell v. McDaniel*, 824 F.2d 1380,

---

[11] The Court does not disturb its previous denial of summary judgment as to the Deficient-Affidavit Claim against Peterson and Moyer in Count II in the previous opinion.   (*See* ECF No. 125.)

1387–88 (4th Cir. 1987)). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

In *City of Canton v. Harris*, the Supreme Court provided the standard for §1983 claims against municipalities based on a theory of inadequate police training. *See generally* 489 U.S. 378 (1989); *see also Rowell v. City of Hickory*, 341 F. App'x 912, 915 (4th Cir. 2009) (stating that Canton "provides the standard for . . . liability" for municipalities based on "inadequacy of police training"). The Supreme Court held "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 388.

For failure to train claims based on a single incident, deliberate indifference can be met, and a supervisor [or policymaker] may be held liable, "where the need for training with respect to the subordinate's conduct was 'plainly obvious.'"[12] *DeHaven v. W. Va. Div. of Corrs.*, No. 2:14-CV-16156, 2014 WL 2765612, at *4 (S.D. W. Va. June 18, 2014) (quoting *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000)). Furthermore, "[i]n order for liability to attach to the municipality, 'the identified deficiency . . . must be closely related to the ultimate injury.'" *Woods v. Town of Danville, W. Va.*, 712 F. Supp. 2d 502, 513 (S.D. W. Va. 2010) (quoting City of *Canton v. Harris*, 489 U.S. 378, 391 (1989)); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S.

---

[12] The Court noted in its previous opinion that Plaintiff's Monell claims appears to be based on a theory of single-incident liability and not on the pattern or practice theory. (*See* ECF No. 125 at 68 ("In this case, the record does not reflect that Defendant City's police officers engaged in a pattern of constitutional violations by failing to provide probable clause in warrant affidavits, or by arresting individuals without probable cause. Instead, Plaintiff only provides evidence of his two arrests—which were roughly four months apart—and the deficient warrant affidavits that led to these arrests.").)

397, 411 ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional . . . right will follow the decision.").

Here, as discussed above, the constitutional rights of individuals to only be arrested where there is probable cause is clearly established. Additionally, the Court above found that Defendant Miller did violate Plaintiff's rights when he arrested Plaintiff without probable cause. However, as the Court noted in its previous opinion, "there is a genuine issue of material fact as to whether Defendant City does, in fact, train its officers regarding constitutional arrests." (*See* ECF No. 125 at 74.) Therefore, this Count is more properly left to the decider of fact. Accordingly, the Court **DENIES** Defendant's motion for summary judgment insofar as it requests judgment as a matter of law on Count III.

D.      *Common Law Malicious Prosecution Claim Against Defendant Miller (Count IV)*

In Count IV of the Complaint, Plaintiff asserts a common law malicious prosecution claim against Defendant Miller alleging that Defendant Miller arrested him without probable cause due to prejudice and/or malice. (*See* ECF No. 1-2 at 60–63.) Defendant Miller argues that Plaintiff cannot establish a prima facie case of malicious prosecution. (*See* ECF No. 35 at 18–21.)

To maintain a cause of action for malicious prosecution, a plaintiff must show the following:

> (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious.

*Morton v. Chesapeake & Ohio Ry. Co.*, 399 S.E.2d 464, 467 (W. Va. 1990) (quoting *Radochio v. Katzen*, 114 S.E. 746, Pt. 1 Syl. (W. Va. 1922)) (internal quotation marks omitted). Malice can be inferred from a criminal charge where there is no probable cause for such prosecution as shown

by a preponderance of the evidence. *See Truman*, 123 S.E.2d at 68.

Here, Defendant Miller does not contest the first and second elements of Plaintiff's common law malicious prosecution claim, but instead contends that Plaintiff has not shown that his arrest was without probable cause or was malicious. (*See* ECF No. 35 at 18.) Therefore, the Court will focus on these latter two elements. *Morton*, 399 S.E.2d at 467 ("In civil malicious prosecution actions, the issues of malice and probable cause become questions of law for the court where there is no conflict of evidence or where there is only one inference to be drawn by reasonable minds." (citing *Truman v. Fid. & Cas. Co.*, 123 S.E.2d 59, 70 (W. Va. 1961)).

Under West Virginia law regarding malicious prosecution, "'[t]he question of the existence of probable cause depends on the defendant's honest belief of guilt on reasonable grounds,' rather than whether a court or other authorities believed that probable cause existed." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 783 (S.D. W. Va. 2015) (quoting *Morton*, 399 S.E.2d at 464). The West Virginia Supreme Court of Appeals provided the following description of this principle:

> Probable cause for instituting a prosecution is such a state of facts and circumstances known to the [defendant] personally or by information from others as would in the judgment of the court lead a man of ordinary caution, acting conscientiously, in the light of such facts and circumstances, to believe that the person charged is guilty.

*Morton*, 399 S.E.2d at 467.

As discussed more fully above, the Court finds that Defendant Miller did not have probable cause to arrest Plaintiff. *See supra* Part III.A.1. As malice can be inferred from lack of probable cause, Plaintiff can establish a prima facie case of common law malicious prosecution. *See, e.g.*, *Weigle*, 139 F. Supp. 3d. at 782–84. Accordingly, the Court **DENIES** Defendants' motion insofar as it requests judgment as a matter of law on Count IV.

E.    *Common Law Malicious Prosecution Claim Against Defendants Peterson and Moyer (Count V)*

Similar to Count IV, in Count V of the Complaint Plaintiff asserts a common law malicious prosecution claim against Defendants Peterson and Moyer alleging that Defendants Peterson and Moyer arrested Plaintiff without probable cause and with malice.    (*See* ECF No. 1-2 at 67–70.) Defendants Peterson and Moyer argue that Plaintiff cannot establish a prima facie case for common law malicious prosecution.    (*See* ECF No. 35 at 18–21.)

As discussed more fully above, to maintain a cause of action for malicious prosecution, a plaintiff must show the following:

> (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious.

*Morton*, 399 S.E.2d at 467.

Here, as discussed more fully above, and as the Court's previous opinion noted, there are genuine issues of material fact as to whether Defendants Peterson and Moyer arrested Plaintiff without probable cause.    *See supra* Part III.B.    As such, this Count is more properly left to the decider of fact.    Accordingly, the Court **DENIES** Defendants' motion insofar as it requests judgment as a matter of law on Count V.

## IV.    CONCLUSION

For the reasons discussed more fully above, the Court **DENIES** Defendants' motion for summary judgment.    (ECF No. 34.)    The Court further **ORDERS** that a telephonic status conference be held in this action on **September 18, 2018, at 2:00 p.m.**    The call-in information

for the call is as follows:   703-724-3100, then dial 4002661# to be placed on hold pending the start of the call.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      July 27, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE